Good morning again. Thank you for your patience in waiting to be the last case on the calendar. I hope it will prove to be worth your wait. The last case on our argument calendar is IMPERIAL or IMPERIALE v. CITY OF SAN DIEGO. Good morning, Your Honor. Jim Dunn on behalf of Appellant Mr. Imperiale. Really, we have two questions for the Court. One, did the District Court err in taking away the issue of the search from the jury? And we believe that given the evidence and the disputed facts, that question is clearly answered in Appellant's favor. And then the second question, which does have a higher threshold, which I think we also meet, however, is did the cumulative acts of the Court in error prejudice Mr. Imperiale's right to a fair trial? Which I think we have a very unusual circumstance where the jurors make a statement at the end of the case saying we want the officers to know that they did not snow us, which is, of course, a very unusual thing for jurors to say. On the issue of the disputed evidence, I'd be happy to address any of the Court's questions. And we make our arguments in the briefs, I think, as fully short of identifying one issue, which is the mistake of fact issue raised by the defendants and the appellees in their brief, arguing that a mistake of fact allows the officers off the hook. I think this Court is very clear in the United States v. King, 244 F. 3rd, 736 at 739, that any mistake of fact must be both objectively reasonable and done in good faith. The good faith issue and the objective reasonableness, certainly the good faith issue, is clearly a question for the jury, which was taken away by the District Court in this case, respectfully. Let me ask you this. Assume, and this is a factual assumption, assume that the officers saw both the expired tag on the license plate itself and which they say they saw, and that they saw that square pink piece of paper taped to the back window, which they say they didn't see. But assume that they saw it. Right. Is there reasonable suspicion to stop them? Well, we have testimony from one of their fellow officers, a traffic officer, who testifies no. No, that would not give you reason to stop. I'm specifically saying reasonable suspicion. Right. It doesn't give you reasonable suspicion to stop. Because I inquired that officer, and, of course, he was reluctant to give that testimony because it undercuts his fellow officer's case. But he does say, if I saw a tag that has the matching month, as was the case here, I would not pull them over. That wouldn't give me a sufficient reason to stop them. It wouldn't give me reasonable suspicion. So now you've confused me. I saw a tag with a matching month. My hypothesis is I saw a tag that is expired. Yes, you see it. But I'm also seeing that square piece of paper in the back window. What I simply meant, Your Honor, was a — the square was the appropriate square for an extension. But, of course, they don't know that until they get up close and read it. I mean, it could be a — I mean, it could be a pink piece of paper that they made out of construction paper. Well, that's what makes this case so compelling, Your Honor, is that they had the information on their mobile data terminal. Now, what information did they have on the terminal? Application pending. In other words, the — when they checked the mobile data terminal, it did not say expired. What it said is the application is pending, which means — Well, why would you apply if you didn't have an expired? I mean, that suggests that there's no registration. It's pending. Well, Your Honor, if the information would say that the registration is expired, if the registration was simply expired, what application pending means is the person has an extension. That's what application pending means. And how do we know that that's what that means? Well, I would like to be able to submit a specific reference to the record of the other traffic officer who — I believe it was Officer — I want to say Padilla, Your Honor. So are you telling us as a matter of law the officers misinterpreted application pending? I would say that, Your Honor. And where do we find that in the record, that application pending means you have registration? Well, it was — Because that's what I hear you telling us. Right. You have — pending means you have registration. Right. Well, if we cannot assert that as a matter of law, it's certainly a question of fact for the jury, is how I would say. Well, but you see, there's a difference. If the officers make a mistake of law, that's one thing. If they make a mistake of fact, that's another thing. Yes, Your Honor. So where do we discover that this was a mistake of law? I just heard you telling me it was a mistake of law. Well, Your Honor, what I was simply saying is that whether or not the officers had a reasonable suspicion should be a question for the jury, and the jury could consider — No, no, no, no. You said this was a legal misinterpretation by the officers of the meaning of application pending. Well, that is how I would view it. And where do we find support for that? Trust, but verify. Yes. We trust you, but we'd like to verify your assertion. Where do we look to verify? Is it the testimony of another traffic officer? If I may, I can find that, I think. Sure. Yeah, if you could find something in the record to support that statement, that would be useful. Thank you. However, what I would suggest, just on what we know from what we're discussing here, is that the language, application pending, is not registration expired. Yeah, but don't slide off for a minute. Okay. Can you find it in the record? If you can't find it in the record here on the fly, you can obviously have a moment to look for it while the other side is speaking. Thank you very much, Your Honor. So you can choose to look for it now or look for it later. Okay. Thank you. I will find that officer's testimony. Do you make that argument in your brief? Which argument, Your Honor? That application pending was misinterpreted by the officers. Is that a legal question? I don't — I didn't think it was necessary to argue that that's a misinterpretation. I felt that — and, of course, the brief speaks for itself better than I can now. But the language, application pending, is clearly not expired registration. And so the — Well, actually, that's not clear to me at all. You just said it. Okay. One of my problems in preparing for your argument was I couldn't figure out what application pending meant. So if you tell me it's somewhere in the record, that would be good, because it doesn't tell me that it's not expired. Right. Unless, you know, I need some policeman telling me, well, this is what appears on the screen, and I don't know. Right. All you say in your brief is it's — it injects ambiguity into the situation. And, in fact — Ambiguity doesn't take away from probable cause or reasonable suspicion. Well, Your Honor, I think that when the district court considered that question to begin with, the court did properly say — and this is at the — in the record at page 67, lines 3 through page 68, line 6. The quotes — the court says the ambiguity is that Mr. Imperiali had taken some steps to correct the expired registration, and that was reflected. He's referring — the court's referring to — Well, we're back again. Correct the expired. That assumes it was expired. See, Your Honor, this is where we — the issue is if a — if registration expires, California, through the DMV, has a process by which you say, okay, my registration's expiring, I need to get a smog, or for whatever reason, I need an extension. And a valid extension of the registration, following the directions of how to post the sticker, et cetera, should protect one from being pulled over without any other justification. The extension tag, I argue, Your Honor, is just as valid as the sticker that says the appropriate month on the license plate. It's a procedure. Yes. Can I ask — okay. The officer said — one of them said that he didn't see the sticker initially, but then he saw it. Yes, Your Honor. And so if he sees it in conjunction with something that says application pending, what's he supposed to do then? He's already stopped the car. Is he supposed to — I don't know what he's supposed to do. Is he supposed to wave the guy away, say sorry? Well, at that point, I think we've already got the seizure. And the question of fact for the jury is, did the officers see the sticker? And that's the issue that the jury has. We said he saw it at some point. Right. The question is, did he see him before he talked to the guy? I mean, when did he see it? The officer does say he saw it as he approached the vehicle. Okay. So he sees it as he approaches the vehicle. Yes, Your Honor. So he's also — he's already seen application pending. He's seen the sticker as he approaches the vehicle. Right. So what's he supposed to do? Well, I — If at that point he sees a sticker with the month 5 on it, and he's already seen application pending, what's he supposed to do? If that's the time he's actually seen it. At that point, the seizure has already occurred by pulling the vehicle. So your point is it's too late, if that's inconsequential? Well, you know, I don't — I don't think it would be fair to me to — for me to argue that the officer should simply throw up his hands and wave from a distance as he sees the — sees the sticker and get back in his car. Well, why not? Why not? Why not? I think you just gave away something. Maybe you didn't need to give away. Thank you, Judge. And I take it back. Well, maybe, maybe not. But here's the argument. He's saying I had reasonable suspicion because I saw the expired tag. I didn't see the pink square on the back. I saw application pending or some such thing on my screen. There's a little ambiguity, actually, as to what he did see on his screen. I stopped the car. I noticed the pink piece of paper on the back window. Why isn't his obligation — because he knows darn well that that pink piece of paper may resolve the problem. Why isn't it his obligation to look at it? And then if he sees, well, everything's fine, to say, you know what, I thought you had an expired tag, but I see you don't. Bye now. As I reconsider the facts, Your Honor, I think that's exactly right. Oh, okay. There's a certain point where a policeman should no longer interfere with a citizen. And the question is, you know, how should he behave? And I agree with that, Your Honor, because at that point there is no — absolutely is no reasonable suspicion because the officer recognizes that all of the DMV requirements have been complied with. And if — and let's just say this, that if there were any problem with the registration, that would have appeared in the mobile data terminal. And what did appear was application pending. So I think that even before the stop — and what is the key question, Your Honor, is when did they see that sticker? Well, he really, really wants to — he wants to stop this guy because he thinks he's involved with drugs. And so I guess the way we do this analysis is could a reasonable officer have stopped — have stopped him because of the drug activity? Well, no, Your Honor. In fact, that very reasonable officer states quite clearly to Internal Affairs when — Well, he could be wrong. So I don't really care what he says. Well, I want to know if a reasonable officer could have stopped him for that reason. Not under the circumstances as were described by the officers. The reasonable officer should not look at an African American and a non-African American simply greeting one another in a parking lot under, you know, floodlights, streetlights, in front of a building out in the open, as being suspicious. Even if that is a high-crime activity, high-crime area. You need something more specific, something articulable. And in fact, we talk about the specific articulable facts in — which did give rise under U.S. v. Lopez Soto, where there was extensive observation of suspicious activity, communication, passing objects between one another. And so in this circumstance, they really had nothing other than an African American and a white person were standing in a parking lot of a liquor store talking to each other. The officer says their hands seemed to come into close proximity, but that's it. I mean, there was — he doesn't even see the hands in contact, doesn't see any object passed. Can I say something? If — he doesn't — when he saw the — whatever the activity was, he doesn't do anything. Can the reasonable — assume it was reasonable. Can the reasonable officer then wait until he gets into his car? Well, that's another question, because Mr. Imperiale, the evidence shows, then goes into a liquor store, according to one of the officers, comes out of the liquor store, is putting something in his car. He's standing — I mean, he's not evidencing any furtive activity whatsoever. This guy is just standing there in broad street light, so to speak. And the officers never bother to simply cross the street and say, hi, how are you? Can we talk to you for a minute? Instead, they let him — and that's because they know that what they have seen is not sufficient. And even though it is an objective standard, I think the facts subjectively confirm what the officers say subjectively to internal affairs. We knew we didn't have enough based on what we saw in the parking lot to pull him over. And so that is the driving motive behind pulling him over. And although a pretextual stop is permitted, it must be a legitimate violation. It must be a clear, legitimate violation of whatever traffic law the officers are using to actually pull the person over. And here we don't have that. What we have at best are disputed facts. The officer's self-serving testimony is disputed by the testimony of Mr. Imperiale and by the officer's observations of what was in the mobile data terminal and by the officer of their compatriot. Well, yeah, but what do you mean when you say disputed? Of course you disputed. But the judge was pretty careful on this. He says this is a Rule 50 motion. It's not a motion for summary judgment. It's a Rule 50 motion. It's pretty much similar. He says I must draw all reasonable influences in favor of that party. There's a distinction between drawing an influence and relying on the absence of evidence. And then he says there's simply no evidence that anybody saw the sticker. And he goes through all the factors. It's after midnight. It's dark. He's been told about the lighting. It's a slanted hatchback type. The rear window makes it difficult to see anything following even in close proximity. And he concludes that for a jury to decide that the officers did see this sticker would be an exercise in pure conjecture and speculation, no evidence. He says absence of evidence. He says there is no evidence that they saw it. And that's true. Well, I respectfully disagree with the evidence. There is no evidence that they saw it. The fact that it was there. The fact that it was there. The fact that, in fact, it is maybe eight, ten times as large as the sticker that they claim that they saw on the license plate. Those two facts alone. And the fact that the officers admitted seeing it as they walked up to the car. This is all evidence which I respectfully submit that the jury did not see. There's no dispute about that evidence. The question is whether they saw it. And the judge says there's no evidence that they did. And that's where I disagree respectfully with the district court. Because the evidence is, look, if the officers said, well, if Mr. Imperiali said, well, my windshield was covered. I mean, I'm trying to imagine a scenario where there's no dispute over whether or not that sticker was there. The fact is the evidence establishes undisputedly that the sticker was there. That it was placed the way it was supposed to be placed per DMV. That it is maybe eight, ten times larger than the sticker that the officers claim to have seen on the license plate. And the officers admit that they saw it as they approached the vehicle. The stickers on the license plate are luminescent, aren't they? That could be. That could be. If you win on this point, what would the case look like if you win? If I win on all points, then. If you win on this, you've got a bad Rule 50 ruling. Yes, Your Honor. Well, if we win on that point, then I believe that that serves as one of the bases of arguing that we ought to win on our second question. However, if. Second question being. Being, did the accumulation of the district court's errors in taking this away from the jury as well as preventing me from asking leading questions of one of the officers as well as its gloss on qualified immunity. Did that cumulatively prejudice Mr. Imperiali's right? Let's say you lose on what you lost on in the trial court. And you're left simply with a case for an illegal seizure. You get to go back and retry the case. Yes. What's the measure of your damages for this illegal seizure? Well, of course, this is not an issue that I had prepared for. However. I would hope you wouldn't file a case without thinking about damages. Of course, Your Honor. But. What is the measure of the damages for this illegal seizure? Well, we have a constitutional breach here. What's the. And. A dollar? Yeah. Well, no, I would certainly. Or attorney's fees. I mean, you know, your attorney's fees are circumscribed by a recovery of a dollar. Certainly, Your Honor. Certainly, Your Honor. And, you know, I am. There's no pot at the end of this rainbow if you win, is there? There may or may not be, Your Honor. Only if you get a part two and get a whole new shot, right? Pardon me, Your Honor? Only if you get part two and get a whole new shot. Well, see, here's an interesting thing. And this is raised in the defendant's briefs, the appellee's briefs. Citing Atwater. There is, of course, the line of cases that say a mere traffic stop is a de minimis intrusion on your court enterprise. The question then becomes, does Atwater vitiate that entire line of cases? Because Atwater now says, when you've got a traffic stop, you have the right to a custodial arrest, the right to, as invasive a search as can be conducted, pursuant to an arrest. All of this is now authorized by the most innocuous traffic stop. So the question would be, what does the soccer parent taking their children home from school, when they get pulled over for a taillight violation, if they are familiar with the jurisprudence of the highest court in the land, what now goes through their mind? Okay. Your time has just expired. Let's hear from the State, and we'll give you a chance for rebuttal. Thank you very much, Your Honor. Good morning, Your Honors. I'm Maria Severson. I represent Officers Henderson and Kreese in the City of San Diego. I said State, sorry, different defendants, right? The government. Yeah. Your Honors, the Rule 50 motion granting the judgment as a matter of law on the issues of the search and arrest were proper. The standard of review is de novo, but the standard of review regarding factual findings is clear error, and this Court must give great deference to the trial judge as well as the law enforcement officer. But on the Rule 50 motion, it's not clear error. No. No. But the factual findings the judge made in order to ---- You mean it's midnight, it's dark, the slanted window, the historical ---- Correct. They saw the sticker. They didn't see the sticker. That may not be true, because on that one, he's taking it away from the jury. And the question is, could a reasonable fact finder have disagreed on whatever evidence was in front? That's not a clear error question. That's a ---- basically, that's a summary judgment issue. Sure. Isn't credibility a quintessential issue for the jury? I mean, that's what we hear from the first day we walk into law school. Credibility is for the jury. And here, there's an awful lot of evidence of the document in the window that would have deprived them of any suspicion, cause, or anything else. It's right there. So in order to make this ruling, you've got to come to the conclusion that the officers are credible. Isn't that for the jury to decide? Yes. As per the jury instructions, credibility is one of the things to consider for the  Didn't the judge take credibility away from the jury here? You know, I need to point out something that is absent in the record here. Absent in the record? Yes. And that is the sticker. There is great evidence that this red sticker was on the back of the hatchback. And the ---- while there's speculation alluded to by the plaintiff, appellant in this case, that the officers might have seen it, there ---- the only evidence is that there was a red sticker in the back, and there's no evidence that the officers saw it or the month beforehand. The sticker itself was never presented in trial. There's nowhere in the record to know if even it was correct according to the month. Also, the only sticker that was presented in trial was one that was used for demonstrative purposes with some whole other month on it. Did the State contest or did your side contest that there was a sticker or that the sticker said, in fact, that he's legal? The record says the way the officer testified was he didn't remember the month that it stated. Vehicle ---- And what did Mr. Imperiali say? I believe he said he did everything the DMV told him. But what is also lacking is ---- Let me push this a little further. Yes. Do we have evidence from Mr. Imperiali that the red sticker in the back window said that you are legal because of whatever you've done, applied and paid your fees? That's his interpretation. He stated it was, but he is not an authority on the law. Well, but his testimony is, I went to the DMV, I paid my fees, they gave me the sticker. Correct? I believe he said he went to the DMV. I don't recall specifically as to the fees. And the officer says, I looked at the sticker, I saw the sticker, but I can't remember. That's what we got. Can't remember the month. It may have been the month that was alleged. It may not have been. I'm just saying the record is absent on that fact. You know, here's my problem. You know, what the judge says and what you say are, the policeman says he didn't see it. Okay? And that it's not evidence just because that they saw it, just because it was there. But you've got a problem. If I say I don't see these glasses and the glasses are there, isn't that evidence? I understand that. I understand that. To me, that gives me a disputed fact. That's a problem. I understand that. I think what we need to look at, though, is, first of all, regardless, let's assume for argument's sake, the sticker was there, it said a month that was 5 and that the officer saw it. There's no mistake as to the law that the California Vehicle Code requires as far as registration. It states that no person shall drive, and it goes on to say, unless it is registered and appropriate fees have been paid under the code. So I think that seeing expired, when the officer saw the expired illuminated tag on the license plate, then they pull up on their mobile data terminal and they notice something that just says application pending, I don't think it's clear to a reasonable officer as to what that means. Well, I don't know the record whether it shows, but it seems to me officers probably see that kind of thing all the time. And, in fact, the testimony shows that the officers had seen stickers before, and people often with expired tags have several vehicles that they never register their car, and they get an expired tab and switch it around on different vehicles. So it actually heightens the officer's suspicions based on the experience and training. So your argument is that even if the officers had seen the expired tags on the plate, which they clearly did see, even if the officers had seen on their screen in the car application pending, which they say they did see, and even if they had seen that pink sticker in the back window, which they say they didn't see, even if they had seen all of those things, there's still reasonable suspicion to make a stop? Yes. That means any time anybody's driving around with a pink sticker on the back and expired tags, but they paid their fees and they're perfectly legal, they're fair game? Your Honor, there is no evidence that that's the case. I asked a question. Yes. That means anybody who has an expired tag on the back, they've gone to the DMV, they've paid their money, they're perfectly legal, and they've got a pink sticker on the back window to prove that, they're fair game. That's reasonable suspicion to stop that person. Your Honor, that your hypothetical assumes that they're legal. And I don't think that's true. That's exactly what my hypothetical assumes. And I'm asking you, does that mean that there's reasonable suspicion to stop them? If it's clear in the law that that's legal, then no. But I think that's a problem. But wait a minute. Let's make sure what you're answering me then, because this, I think, may be an important point. Tags on the license plate are expired. Shows up on the database on the computer screen, application pending. And there is a tag in the back window that the officers see. They can't tell as they're driving along, of course, what is said in the writing on that pink tag. They just see the pink tag. But let's you and me agree that on this particular pink tag, it says, paid the money, legal. But the officers, of course, don't know that part. All they see is the pink sticker in the back window. Is there reasonable suspicion to stop that car? I would say yes, Your Honor. That means then, under that answer, even if I have done everything legal, and I put the pink sticker in the back window, I am fair game. Is that right? No, it means there's reasonable suspicion, which doesn't have to exclude all possibilities of innocence. Right. I'm fair game. There's a saying, I can be stopped, because that's reasonable suspicion. There's no law that says what a pink sticker means. And conspicuously absent from the record was plaintiff bringing in any evidence. Was there evidence in the record at all showing whether this was registered or not, this vehicle was registered or not at the time it was stopped? No. Well, there's Mr. Imperiali's testimony. Yes, that he had registered. There was nothing from the DMV to show whether it was registered or not? No. And the original sticker wasn't brought into court? That's correct. That's correct. Did your side check to see whether it was registered or not? What we had before is what it said, registration expired at the time. And we have to go with what happened. Well, but did you check with the DMV? I personally, no. Anybody? I did not try. Did the government check? I cannot answer that, because I was not the trial lawyer on this case. It seems that somebody doing a careful job would check to see whether the car was or was not registered, especially when the paper doesn't show up. And you just told us that crooks all the time play games with paper here and paper there and paper everywhere. I understand that. I cannot answer that question, because I was not the trial lawyer below. However, it is the plaintiff is bringing a con – and it's not in the record. It's a trial record. The plaintiff is bringing a claim alleging constitutional violations against the officer, saying the search was not based on probable cause or the stop was not reasonable. It's not the state's burden to put on that evidence anyway. The plaintiff has to put on that burden in order to get the money from which he seeks from the officers in the city. Let me try some more hypotheticals here. Okay. Now, we have the – they see application pending. They see – we're going to assume they saw a pink thing. And as they approach, they see that, yes, indeed, it's one of those extension stickers, and this guy isn't expired. Not really. What are they supposed to do? As they approach the car, they see that everything's okay. If all they had reason to stop this person was the vehicle registration, I suppose one option would be to inquire, see if fees are paid, and then say thank you and let them go on their way. If once upon seeing fees are paid, because that is what is required by vehicle code registration 4000. Okay. But here they didn't have that. They had – The guy has a pink sticker, and it's got the right month on it. I mean, it seems to me that they got that from the DMV so that he could go around without being bothered. You would think, but there's no evidence to show that – there's no evidence to show what other than some five or eight or whatever. Yes, that's the month. Right, but there's no evidence to show that. And you're not expired until that month passes or whatever it is. I don't know. I understand that, Your Honor, as far as the month, but there's no evidence to say that it has any vehicle information such that it belongs to that vehicle. Like it says, for instance, it's the Nissan Hatchback 1987, what have you. There's no evidence that it belongs to that vehicle. When you get that little thing to stick on your license plate, does the little thing have something that identifies the car and indicates it's the right thing for that vehicle? No. Okay. I mean, however, when an officer – So it does it as a number on it. Yes. When an officer pulls it up on the MDT, the mobile data terminal in the police officer's car, it does give information about the car. So, for instance, if it's a red Honda that has that on and they look at it, it comes back a blue Mercedes, then it's obviously not belonging to that car. So, I mean, it does have some data that you're able to check. So the pink extension sticker has no information on it? I don't know. It was never introduced. Well, I thought you had a model one. There was a facsimile of one. I don't – it was used for demonstrative purposes. I don't think it was entered into evidence as an exhibit. Where'd this come from? That was an exhibit, I believe, offered by the plaintiff appellants in this case to show that it was – This was offered by the plaintiffs, showing you can see through the back window? What page is this? I – that was into evidence. I don't – I can't recall who offered it. But it is – If the plaintiff offered it, that was a mistake. One would think. For people listening, I'm showing a photograph where you can't see anything through the back window. Hello, Boise. What page is that thing on? I forget. It's in here somewhere. I can't. It's 169. Okay. Thanks. Your Honors, the questions that have been posed to the State in argument here are the – mostly pertaining to mistake of law. And I think, if anything, what we have here – I don't think there's any mistake of law or a mistake of fact, because I don't think it's – Let me ask you this. Let's assume that the officer did not see the pink sticker. But – and they stop based on what they think is the reasonable suspicion that there's an expired registration. As the officer walks up toward the car, he sees the pink sticker. Does the officer have any obligation to actually inspect the pink sticker to see whether his reasonable suspicion is well-founded? Well, as a general matter, I don't think an officer has a duty to investigate claims of innocence. That's well established. I'm asking you a different question. Does an officer have an obligation to look at the sticker to see what information it contains as he's walking up to the vehicle? I would think an officer should, in conjunction with the paperwork supporting it. Again – He should. Then he has an obligation to do that. I would think he would have an obligation to look at paperwork supporting that the fees are paid according to vehicle code. You know, you keep sliding off my question. My question is very simple. As he walks up to the car, he sees that pink square. Yes. Does he have an obligation to look at it and read what it says on it? If it's pointed out to him or if he sees it all, then yes. I said he walks up to the car, he sees it. Yes. Then yes. Does he have an obligation to look at it and see what it says? I would say that would be prudent. And assuming he doesn't look at it, but had he looked at it, he would have discovered that the information on it, if true, says this car is validly registered, what then is his obligation? To say, you know, I stopped you because I had reasonable suspicion. My reasonable suspicion has now evaporated because I see that this pink sticker says you're fine. Is that what he should do? If the pink sticker has the information that indicates everything that is required according to Vehicle Code 4000, then sure. Then why in this case was this not an unreasonable detention once he spotted the pink sticker? Because under what you just told me, he should have read it. And if he had read it, and if, and I have to say, if Mr. Imperiali is telling the truth as to what that pink sticker said, well, then why, how reasonable, how could that stop have continued? I don't know that the sticker had all the information that belonged to that car. I understand that. So, I mean, to say, let's assume that it said it had the month 5 on it, as Mr. Imperiali alleges. I don't think that that enough with, if it didn't have information about the car, if it didn't have information indicating fees are paid, that it would make it not violative of Vehicle Code 4000. That's not to say that the officer couldn't inquire and Mr. Imperiali could produce the evidence and say, look, here's my supporting paperwork, you know, fees paid, they gave me this extension, that's not what we have here, though. And I think that's a big difference. I think in looking at it. What we do have is the officer testifying, the officers testifying, we didn't see the pink sticker. That's correct. Until approaching the vehicle. That's correct. On foot. On foot, that's right. And then the officer not looking at the sticker and simply going up to Mr. Imperiali and then the scuffle, that I won't characterize because there may be disputes as to precisely what happened, but the scuffle. Yes. So they didn't look at the sticker. They simply moved to Mr. Imperiali. Is there a police academy in the world that tells you to examine the sticker without paying any attention to the inhabitant of a car at midnight? No, no. There's not. And, in fact, you know, that's where these officers, there's not clear guidance for these officers. The court, when they don't. Well, that's part of my question. I mean, I would have thought a reasonable answer might have been, you know, if he has reasonable suspicion to stop, there may be some reason to think that this person may be in some fashion dangerous, and to spend the time peering over with a flashlight is maybe bad practice, which I assume is Judge Cross's question. Yeah. Okay. The most dangerous situation for an officer is to stop somebody in a car at night. Yes. And that is testimony that actually came out in the trial by some of the sergeants as well as I would say the court could probably even take judicial notice of that if you just watched the news alone. You don't pay attention to paperwork until you have the persons under control. Rule one. And I think that's a very valid point. Aside from the vehicle code violation, what we also have here, we can't forget. I know we're spending a lot of time on this, but I'd really like the Court to consider as well that there was PC for an arrest based on the officer's observations of the drug transaction. Because I'm short of time, I'll just summarize some of the testimony in the record based on the officer's training that they received at the academy. This is not two people talking, and I must divert for a second that any allegations, both in the brief as well as by appellants, pertaining to Brown v. Board of Ed or anything to do with race are wholly without merit as they were not put in evidence at the trial, not argued, no cause of action brought on it, not considered by the judge. It's a complete red herring and purely inflammatory. What we do have is the testimony of the officer's training. Here's an officer two years in the field. He's been trained at the academy for hours and hours on how to identify a hand-to-hand transaction. This is not a handshake. The record actually demonstrated it for the court in the record where it's more of a horizontal sliding away. And he testifies this is the first time he's actually seen one. Right. If, in fact, this was one. Correct. So this is what he sees. They've been looking at this area. These officers have identified this under their problem-oriented policing as a high drug activity. The fact that whether or not Mr. Imperiali was, in fact, dealing or buying drugs is irrelevant. It's what the officer saw, and it's based on the totality of the circumstances, their personal knowledges and experiences and training and so forth. And those are all bases that this Court and the Supreme Court have said are okay to use. So this stop, the fact that it might have been a pre-stop for the narcotics, it would have been fine as just a narcotics stop alone, and that's what the court had noticed there as well. With regards to, just very briefly, any kinds of prejudice, first of all, with regards to the leading questions, the record absolutely belies any contention the plaintiff was not able to ask leading questions. Moreover, there's absolutely nothing in the record that shows what the plaintiff wasn't able to accomplish. Exactly. In fact, in 29 pages I counted 34 leading questions right there, even after the court made a comment about, you know, it's my discretion. With regards to the qualified immunity instruction, first and foremost, the jury never got there. The court went over the, without commenting first on the court's commentary, with regards to the instruction, the court did go over the special verdict form in painful detail on the jury's side, yes or no, and what questions it would lead you to. The jury never got to the qualified immunity instruction. Furthermore, the plaintiff never objected with specifics. The only basis for plaintiff's objection on the qualified immunity was that they thought that it was withdrawn from the model jury instructions, but the judge pointed out, I didn't use that one. I used the one submitted by the parties. There is references, and we cite to it in our brief, where plaintiff says, okay, I agree. Do you stipulate to the instructions as given? Yes, Your Honor. The court admonished the jury, so there's no error that can possibly be assigned. The fact that one juror made a comment, jurors do that all the time. So with that, I thank you, Your Honor. Roberts. Thank you very much. Mr. Dunn, were you able to find the testimony as to the meaning of application pending? Dunn. Well, I found Officer Padrone's testimony, Your Honor, which is on page one, I believe 113 of the excerpt of the record. And I may just read it in the record. Well, it's already in the record. What page are you on? It would be, I believe, page 113. Of the excerpt? I don't think so. What does it say? What it says is, I asked directly Officer Padrone the question, what is the crime? It's a 4000A. What is that crime? Unregistered vehicle. Question. The person who has a valid extension has a registered vehicle. Are they in violation of 4000A? If they go to the DMV and do everything the DMV tells them to do, they give them a temporary permit, are they in violation of 4000A? Answer, no. They're not in violation of 4000A. Then I just don't want to take up too much time, but I go into the question at hand here with the officer. If they're explaining the appropriate mark on the tag, right, in the back window. And by the way, that exhibit is not the vehicle in question. In the exhibit I just brought you. You know, I wouldn't mind you getting to the question I asked, which is, you had said in our argument before that you had testimony as to what the meaning of application pending is. And I asked you to find that in the record if you could. Did you find anything in the record that says this is what application pending means? Yes, Your Honor. Okay. And where is that and what's it say? Let me find exactly. I add that question, Your Honor. Question, I'd like to, so if you call up on the screen and you see it's the month of May, meaning the appropriate month, and the person has a number five temporary operating permit, and you call up on the computer and the computer tells you the application is in process and the application date, because this was also on the MDT, is 4-20, and the renewal date is 4-22. So the application was filed prior to expiration of the tag of the renewal date. That is, it was filed prior to it. Is it fair to say that there's no probable cause to believe that the person is committing the crime of driving with an expired registration? You assume that there was an operating permit in your question, so it doesn't tell us anything about what application pending means. Can I hear what the answer was? Yes, there was an objection vague. The court overruled the objection. You can answer if you know the witness. I would need more information. For example, what is the date this is happening? It's May 18th. Answer, May 18th? Yes. And I see that they went through on the 20th of April. Answer, then I would say it's okay. And that officer. And part of your question is assuming that they saw the pink sticker that has a 5 on it. And, of course, they're testifying that that's not true. Of course. And I asked you a very narrow question, which was just really what does application pending mean by itself? And that was not your question. I see, Your Honor. Well, that is as close as the testimony comes, and that's with Officer Padron. And the testimony is a little more extensive. I mean, that testimony is not worthless because maybe the jury is entitled to disbelieve the officers and to think that they saw it. But, okay, I'm with you. Did you offer evidence from the DMV that the car was appropriately registered at the time it was stopped? No, Your Honor. Where was the sticker? Where was the sticker? It was in the lower. At the trial, it never showed up. Oh, the sticker itself. Right. Your Honor, by the time that we had gotten to trial, we didn't even have the vehicle any longer, much less the original sticker. So the sticker is gone. The sticker was gone. And you offered no indication at all that it was registered at the time? No, we did, Your Honor. Why just? That was Mr. Imperiali's testimony. No, no, no. I mean from the DMV. No, you're correct, Your Honor. We did not. Why not? I am far less than Clarence Darrow and perhaps even lesser legal lights, Your Honor. But certainly I should have, shouldn't I? Yeah, sure, if you didn't have the sticker, especially. But this testimony about application filed on 420, was that hypothetical or was that actually? No, that's in the record from the defendant officers describing what they saw. Oh, okay. They see that the registration date is 422. Okay. And the application is initiated 420. Okay. And that, of course, is a very important fact that I. . . All right. So the officers testified as to those dates. Yes, Your Honor. That's not merely hypothetical. Okay. And Mr. Imperiali, in fact, in his testimony says that he did provide all the DMV documentation to the officers when they approached the vehicle. He had the receipt for the smog that he was waiting for, the receipt for his registration. He had all of the documentation with him and presented it. He had the receipt for the smog he was waiting for? No, the smog that he failed. When you go to get your car smogged and it fails, they give you some documentation to provide. So he had in his hand the registration? Well, the extension, yes, Your Honor. What happened to that by the time the trial rolled around? We actually had that. It was excluded as hearsay. We had that and were prepared to present that. What did it show in terms of the registration of the car? That he had a valid extension. He was, you know, he had a valid. . . The car was. . .  That was excluded as hearsay? Yes, Your Honor. It was. . . It was. . . See, the officers claimed that Mr. Imperiali. . . Now, I hope my recollection is clear. The officers claimed Mr. Imperiali did not present them with information. We had the documents. Mr. Imperiali found the documents after the close of discovery. We attempted to introduce those as impeachment documents. After the close of discovery? Yes, Your Honor. But they were original documents. And the information on the MDT. . . Could that be why you weren't allowed to use them? Because they were. . . Oh, yes. That was the reason. Not hearsay. No, forget it. Too late. Okay. Thank you very much. Thank you, Your Honor. The case of Imperiali v. City of San Diego et al. is now submitted for argument. I thank counsel for their patience in waiting for us and the last case on the calendar. Oh, that was. . . Mr. Imperiali, Your Honor. Thank you. Thank you.
judges: Trott, W. Fletcher, Restani